IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GLEN FALLIN,                      :        CIVIL NO.  1:15-CV-248
                                  :
        Plaintiff,                :        (Judge Kane)
                                  :
        v.                        :
                                  :        (Magistrate Judge Carlson)
DAVID MUELLER, ASSISTANT  :
DISTRICT ATTORNEY                 :
                                  :
        Defendant.                :

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

The plaintiff in this case, Glen Fallin, acting *pro se*, first filed this lawsuit

against an assistant district attorney in York County on February 4, 2015.  (Doc. 1.)

According to Fallin's initial complaint, this lawsuit arose out of a prosecution of

Fallin's son in 2012 and 2013 on criminal trespass charges.  (Id.)  That state criminal

case ultimately concluded with Fallin's son's enrollment in, and completion of, an

Accelerated Rehabilitative Disposition (ARD) program, a form of pre-trial diversion.

(Id.)  In the course of this state criminal case, however, Fallin apparently endeavored

to communicate with the assistant district attorney, the judge, and the alleged victims,

communications that Fallin contended were misconstrued by all parties.  As a result,

1

the assistant district attorney sent Fallin a letter warning Fallin that he should refrain from acts that could be construed as the unauthorized practice of law on behalf of his son, and generally declined to speak directly with Fallin about his son's case in the future. (Id.) Alleging that these actions violated his constitutional rights, and caused him emotional and economic harm, Fallin sought to sue the assistant district attorney under 42 U.S.C. §1983 for unspecified civil rights violations, and demands compensatory damages of $100,000, punitive damages of $50,000, along with declaratory and injunctive relief. (Id.)

Along with his complaint, Fallin sought leave to proceed *in forma pauperis*. (Doc. 2.) We granted Fallin leave to proceed *in forma pauperis* but as part of our legally-mandated duty to screen *pro se in forma pauperis* pleadings, we recommended that this complaint be dismissed, without prejudice to the filing of an amended complaint. (Doc. 6.) The district court adopted this recommendation, (Doc. 9.), and Fallin has now filed an amended complaint, (Doc. 18.), which we have informed Fallin will also be subject to a screening analysis. (Doc. 21.)

This amended complaint now names both the assistant district attorney, and the district attorney for York County as defendants. (Doc. 18.) While the district attorney is now named as a defendant, the amended complaint is devoid of any well-

pleaded factual averments identifying participation or acquiescence by the district attorney in any unconstitutional misconduct. (Id.)

In his amended complaint, Fallin provides a more detailed factual account of his son's arrest, and prosecution on state charges. (Id., ¶¶6-37.) Fallin also confirms that this state case was ultimately resolved through his son's participation in an Accelerated Rehabilitative Disposition (ARD) program. (Id.) Notably, the detailed factual narrative submitted by Fallin regarding his involvement in his son's case permits a reasonable inference that for a period of time Fallin, acting *pro se*, was serving as his son's *de facto* legal representative in these proceedings. Thus, Fallin details substantive discussions which he had on behalf of his son with police, prosecutors, victims, witnesses, and judicial officers and courthouse staff regarding the disposition of these state charges, communications which collectively would have created a reasonable inference that Fallin was attempting to act as his son's counsel. (Id.)

While Fallin has denied subjectively intending to play this role in his son's case, he contends that in the amended complaint that the assistant district attorney's letter which stated that he was perceived as trying to fill this role while warning Fallin that he should refrain from acts that could be construed as the unauthorized practice of law on behalf of his son, and declining to speak directly with Fallin about his son's

case in the future, violated Fallin's rights in the following respects: First, Fallin alleges that this action invaded both Fallin's constitutionally protected right of family integrity and Fallin's personal constitutionally protected liberty interest. (Id., ¶1. I-ii.) In addition, Fallin alleges that the assistant district attorney's letter unconstitutionally infringed upon the plaintiff's First Amendment right to petition on behalf of his son. (Id.)

Having conducted a second screening review of this amended complaint, for the reasons set forth below, we find that it too fails to state a claim upon which relief may be granted. Accordingly, it is recommended that this amended complaint be dismissed.

## II. Discussion

### A. Screening of *Pro Se In Forma Pauperis* Complaints–Standard of Review

This court has an on-going statutory obligation to conduct a preliminary review of complaints filed by plaintiffs who seek leave to proceed *in forma pauperis,* and seek redress against government officials. See 28 U.S.C. §§1915 and 1915A. Specifically, we must assess whether a *pro se, in forma pauperis* complaint "fails to state a claim upon which relief may be granted." This statutory text, in turn, mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides

that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not

alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).  As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." <u>Id.</u> at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u>

In keeping with the principles of <u>Twombly</u>, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u> at 679.  According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> at 678.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be

supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.  First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to  show that the plaintiff has a'plausible claim for relief.'  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has also observed:  "The Supreme Court in Twombly set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in Iqbal.  The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.'  Twombly, 550

7

U.S. at 570, 127 S.Ct. 1955.  A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955).  This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.'  Id.  A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " Burch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) cert. denied, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'  Iqbal, 129 S.Ct. at 1947.  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'  Id. at 1950.  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'  Id."  Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

In our view, these pleading standards apply to all aspects of the court's threshold analysis of a complaint's legal sufficiency. Thus, we will apply this analysis both when assessing the adequacy of the factual assertions set forth in the amended complaint, and when examining whether the amended complaint properly invokes the jurisdiction of this court.

### B.   This Complaint Fails to State A Claim Upon Which Relief Can Be Granted

Applying these legal benchmarks in this case, dismissal of this amended complaint is warranted because the amended complaint fails on a number of scores to meet the substantive standards required by law, in that it does not set forth a "short and plain" statement of a cognizable violation of some right guaranteed by the

Constitution or laws of the United States.  Some of the flaws in this particular *pro se* amended complaint are discussed separately below.

> **1.    Fallin May Not Bring a Civil Rights Arising Out of this State Case Which Did Not Conclude Favorably for The Plaintiff or His Son**

At the outset, this *pro se* amended complaint fails because it continues to proceed on the flawed legal premise that Fallin may bring a civil rights action premised on claims arising out of a state criminal prosecution of his son which resulted in an ARD disposition.

This he cannot do.  Quite the contrary, it is well-settled that an essential element of a civil rights claim in this setting is that the underlying criminal case must have been terminated in favor of the civil rights claimant.  Therefore, where, as here, the civil rights plaintiff brings a claim based upon a state criminal case that did not result in a favorable termination, the plaintiff's claim fails as a matter of law.  The United States Court of Appeals for the Third Circuit has aptly observed in this regard:

> The Supreme Court has "repeatedly noted that 42 U.S.C. § 1983 creates a species of tort liability." Heck v. Humphrey, 512 U.S. 477, 483(1994) (quoting Memphis Community School Dist. v. Stachura, 477 U.S. 299, 305(1986)(internal quotation marks omitted)).  Given this close relation between § 1983 and tort liability, the Supreme Court has said that the common law of torts, "defining the elements of damages and the prerequisites for their recovery, provide[s] the appropriate starting point for inquiry under § 1983 as well." Heck, 512 U.S. at 483(quoting Carey v. Piphus, 435 U.S. 247, 257-58,(1978)).  The Supreme Court applied

this rule in <u>Heck</u> to an inmate's § 1983 suit, which alleged that county prosecutors and a state police officer destroyed evidence, used an unlawful voice identification procedure, and engaged in other misconduct.  In deciding whether the inmate could state a claim for those alleged violations, the Supreme Court asked what common-law cause of action was the closest to the inmate's claim and concluded that "malicious prosecution provides the closest analogy ... because unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process." <u>Heck</u>, 512 U.S. at 484. Looking to the elements of malicious prosecution, the Court held that the inmate's claim could not proceed because one requirement of malicious prosecution is that the prior criminal proceedings must have terminated in the plaintiff's favor, and the inmate in <u>Heck</u> had not successfully challenged his criminal conviction. <u>Id</u>.

<u>Hector v. Watt</u>, 235 F.3d 154, 155-156 (3d Cir. 2000).

It is further well-settled that an ARD resolution of a state criminal case does not constitute the type of favorable termination required by <u>Heck</u> as a prerequisite for an federal civil rights lawsuit. As the United States Court of Appeals for the Third Circuit has aptly observed:

The ARD program is a court-supervised compromise.  <u>See</u> <u>Davis</u>, 493 F.Supp. at 92; <u>see also</u> <u>Commonwealth v. Kindness</u>, 247 Pa.Super. 99, 371 A.2d 1346 (1977) (describing termination of criminal charge under ARD program as a court-supervised compromise).  Nevertheless, the ARD program imposes several burdens upon the criminal defendant not consistent with innocence, including a probationary term, "restitution ... imposition of costs, and imposition of a reasonable charge relating to the expense of administering the program, and such other conditions as may be agreed to by the parties." Pa. R.Crim. P. 316(a).  We agree . . . that probation constitutes an "unfavorable" period of judicially imposed

limitations on freedom in which the probationer's violation of the program's terms may result in criminal prosecution. <u>Singleton</u>, 632 F.2d at 193–95.  Viewing these factors together, we hold the ARD program is not a favorable termination under <u>Heck</u>.

<u>Gilles v. Davis, 427 F.3d 197, 211 (3d Cir. 2005)</u>

In this case it is evident from Fallin's  amended complaint that his son's prior state criminal prosecution did not terminate favorably, since his son underwent ARD.  This immutable fact presently defeats any federal civil rights claims arising from this state criminal case, and compels dismissal of these claims.  In short, this amended complaint is based upon the fundamentally flawed legal premise that Fallin can sue the state for acts undertaken in this prosecution even though his son's criminal case did not resolve itself favorably for the plaintiff.  Since this premise is simply incorrect, Fallin's amended complaint fails as a matter of law.

## 2.    <u>The Prosecutors Named in This Complaint Is Entitled to Immunity From Liability</u>

Moreover, this  amended complaint fails with respect to the state prosecutors named in the complaint.  While the nature of his claims against the prosecutors is sometimes difficult to discern, it appears that the plaintiff is suing the prosecutors, in part,  for the very act of prosecuting his son.  This he may not do. It is well-settled that a criminal defendant may not sue prosecutors for their act of filing charges against him since such conduct is cloaked in immunity from civil liability. The

immunity conferred upon prosecutors for the quasi-judicial act of filing and bringing

criminal charges is broad and sweeping:

> [T]he Supreme Court [has] held that state prosecutors are absolutely immune from liability under § 1983 for actions performed in a quasi-judicial role. This immunity extends to acts that are "intimately associated with the judicial phase of the criminal process," such as "initiating a prosecution and ... presenting the State's case." Court has noted numerous public policy considerations underlying its extension of absolute immunity to prosecutors: [S]uits against prosecutors for initiating and conducting prosecutions "could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate"; lawsuits would divert prosecutors' attention and energy away from their important duty of enforcing the criminal law; prosecutors would have more difficulty than other officials in meeting the standards for qualified immunity; and potential liability "would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." ... [T]here are other checks on prosecutorial misconduct, including the criminal law and professional discipline.

Yarris v. County of Delaware, 465 F.3d 129, 135 (3d Cir. 2006)(citations omitted).

Here, we find that this complaint largely seeks to hold these prosecutors

personally liable for prosecutorial actions in bringing these charges and resolving

them through ARD.  Since these officials are immune from personal, individual

liability for his actions in bringing this criminal case, Fallin's civil lawsuit should be

dismissed.

13

### 3.      Fallin Has Failed to Plead a Claim for Supervisory Liability Against the District Attorney

Further, Fallin has named a supervisory defendant, the district attorney, in his amended complaint but has not alleged sufficient facts to give rise to supervisory liability against this official.   In considering claims brought against supervisory officials arising out of alleged constitutional violations, the courts  recognize that agency supervisors may be exposed to liability only in certain, narrowly defined, circumstances.

At the outset, it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendants were prison  supervisors when the incidents set forth in the complaint occurred.   Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution.  Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980).  Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice.  Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, it is well-established that:

14

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

> As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

Ashcroft v. Iqbal,  556 U.S. 662, 676 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates.  O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D.

Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged *and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them.* See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)." Jetter v. Beard, 183 F. App'x 178, 181 (3d Cir. 2006)(emphasis added).

Here, Fallin does little more than name the district attorney in the caption of the case, and then seek to hold that official liable based upon the official's supervisory status without making any specific factual allegations about the defendant in the body of this pleading. To the extent that Fallin simply premises the liability of this defendant upon his supervisory status without setting forth any further factual basis for a claim in the body of this pleading, this cursory style of pleading is plainly inadequate to state a claim against a prison supervisor and compels dismissal of the defendant. Hudson v. City of McKeesport, 244 F. App'x 519 (3d Cir. 2007) (affirming dismissal of defendant who was only named in caption of case.)

### 4.   The Defendants Are Entitled to Qualified Immunity

Finally, with respect to Fallin's First Amendment petitioning claim, and his claim of interference with his constitutional right to family integrity, we find that the defendants are entitled to qualified immunity based upon the facts as pleaded by Fallin. As we have observed, the detailed factual narrative submitted by Fallin

regarding his involvement in his son's case permits a reasonable inference that for a period of time Fallin was serving as his son's *de facto* legal representative in these proceedings, since Fallin details discussions which he had on behalf of his son with police, prosecutors, victims, witnesses, and judicial officers and courthouse staff, communications which collectively created a reasonable inference that Fallin was attempting to act as his son's counsel.

This court is entitled to address qualified immunity, *sua sponte*, when appropriate.  See Doe v. Delie, 257 F.3d 309 (3d Cir. 2001) (affirming *sua sponte* recommendation of qualified immunity by U.S. magistrate judge).  In this case, even if Fallin had stated a colorable constitutional claim, we find that the defendants would still be entitled to qualified immunity from these claims for damages.  In order to establish a viable civil rights claim Fallin do more than make arguable or colorable allegations.  Government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known."  Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Pearson v. Callahan, 555 U.S. 223 (2009).  This doctrine, known as qualified immunity, provides officials performing discretionary functions not only defense to liability, but also "immunity from suit."

Crouse v. S. Lebanon Twp., 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (Conner, J.)

(citations omitted).  Qualified immunity

> balances two important interests – the need to hold public officials
> accountable when they exercise power irresponsibly and the need to
> shield officials from harassment, distraction, and liability when they
> perform their duties reasonably.  The protection of qualified immunity
> applies regardless of whether the government official's error is "a
> mistake of law, a mistake of fact, or a mistake based on mixed questions
> of law and fact."

Pearson, 555 U.S. at 231.

Determinations regarding qualified immunity, and its application in a given

case, require a court to undertake two distinct inquiries.  First, the court must evaluate

whether the defendant violated a constitutional right.  Saucier v. Katz, 533 U.S. 194,

201-02 (2001), abrogated in part by Pearson, 555 U.S. 223; Curley v. Klem, 499 F.3d

199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006).  If the

defendant did not actually commit a constitutional violation, then the court must find

in the defendant's favor.  Saucier, 533 U.S. at 201.  If the defendant is found to have

committed a constitutional violation, the court must undertake a second, related

inquiry to assess whether the constitutional right in question was "clearly established"

at the time the defendant acted.  Pearson, 555 U.S. at 232; Saucier, 533 U.S. at 201-

02.  The Supreme Court has instructed that a right is clearly established for purposes

of qualified immunity if a reasonable state actor under the circumstances would

understand that his conduct violates that right.  <u>Williams</u>, 455 F.3d at 191 (citing <u>Saucier</u>, 533 U.S. at 202).

In order to find that a right is clearly established, "the right allegedly violated must be defined at the appropriate level of specificity." <u>Wilson</u>, 526 U.S. at 615.  The Supreme Court has explained that, at least in some cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." <u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002) (quoting <u>United States v. Lanier</u>, 520 U.S. 259, 271 (1997) (internal quotation marks and citation omitted)).  In some cases, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." <u>Wilson</u>, 455 F.3d at 191 (quoting <u>Hope</u>, 536 U.S. at 741).

The court is no longer required to conduct these two inquiries sequentially, <u>Pearson</u>, 555 U.S. at 239-40, and it may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted.  <u>Id.</u>

Applying these benchmarks to this case where Fallin's amended complaint alleges well-pleaded facts which would have supported a reasonable inference that he was trying to act as his son's counsel, we find that nothing about the assistant

district attorney's letter warning him to refrain from this activity transgressed clearly established constitutional rights of the plaintiff.  At the outset, with respect to any First Amendment petitioning claim, we are constrained to note that the First Amendment has not been construed to give a parent a free-standing constitutional right to represent a child in litigation.  Quite the contrary, the long-standing rule in this court has been that a parent, acting *pro se*, may not represent a child in litigation.  Osei-Afriyie by Osei-Afriyie v. Med. Coll. of Pennsylvania, 937 F.2d 876, 878 (3d Cir. 1991).  Furthermore, it has been held that this long-standing rule forbidding parents from acting as *pro se* attorneys for their children, does not violate the First Amendment.  Johns v. Cnty. of San Diego, 114 F.3d 874, 876 (9th Cir. 1997)(denying First Amendment free exercise claim).  In light of this settled case law, it cannot be said that the defendants violated Fallin's clearly established First Amendment rights when they suggested that it was inappropriate for him to appear to represent his son in this state criminal case.  The defendants are entitled to qualified immunity on this claim.

Likewise, the defendants are entitled to qualified immunity on Fallin's claim that this correspondence violated Fallin's constitutionally protected right of family integrity.  At the outset, we note that Fallin's amended complaint suggests that he misconstrued the correspondence since Fallin alleges that he refrained from speaking

20

to his son after receiving this letter. (Doc. 18, ¶33.) Nothing in the correspondence purported to limit in any way familial communications within the Fallin household. Rather, this letter simply warned Fallin that he should not act as his son's legal representative in this state criminal case, and that the district attorney's office would not communicate with him as his son's legal representative.

In any event it is clear that the substantive due process right to family integrity is subject to reasonable restrictions and limitations that may arise in the context of a criminal investigation or prosecution of one family member which may affect other members of the family. See Mulholland v. Gov't Cnty. of Berks, Pa., 706 F.3d 227 (3d Cir. 2013); Miller v. City of Philadelphia, 174 F.3d 368, 370 (3d Cir. 1999). In this case, to the extent that the district attorney's guidance that it would not communicate with Fallin about his son's case in some incidental way burdened Fallin's right to family integrity, that incidental burden was imposed as part of a criminal case, consistent with settled legal principles which forbid *pro se* parents from trying to legally represent their children. In this setting it cannot be said that the actions of the defendants breached some clearly established due process right owed to Fallin.

In short, nothing in the defendants' conduct advising Fallin that they could not communicate with him as his son's *pro se* legal representative could have alerted

these officials that their actions violated "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999).  Therefore these officials should be entitled to qualified immunity in this case.

### 5.    Fallin Is Not Entitled to the Injunctive Relief He Seeks

Finally, Fallin's amended complaint seeks wide-ranging declaratory and permanent injunctive relief in the form of a declaration that this correspondence was unconstitutional, expungement of district attorney files, and disclosure of otherwise undefined agency records to Fallin.  We should decline this invitation to issue some sort of far-reaching permanent injunction in this case since:  "A court may issue a permanent injunction [only] where the moving party has demonstrated that:  (1) the exercise of jurisdiction is appropriate; (2) the moving party has actually succeeded on the merits of its claim; and (3) the 'balance of equities' favors granting injunctive relief.  Ciba–Geigy Corp. v. Bolar Pharmaceutical Co., 747 F.2d 844 (3d Cir.1984)." Chao v. Rothermel, 327 F.3d 223, 228 (3d Cir.2003).  Here, our merits analysis of Fallin's amended complaint strongly suggests that he cannot succeed on the merits of his claims.  This finding, therefore, cautions against conferring permanent injunctive relief to the plaintiff.

### C. __The Amended Complaint Should Be Dismissed With Prejudice__

Having conducted this screening analysis and determined that this amended complaint is still wanting, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, See Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). With respect to the defendants and claims in this amended complaint which we have identified as deficient in this Report and Recommendation, in this case the court has previously provided the plaintiff with ample opportunities to amend these pleadings, but to no avail.  The current amended complaint still fails to state a viable civil rights cause of action against these defendants, and actually repeats assertions that were previously found to be legally insufficient.  Since the plaintiff has been afforded opportunities to correct the deficiencies identified in his prior complaint with respect to these defendants, has failed to state a viable civil rights cause of action, and the factual and legal grounds proffered in support of the amended complaint make it clear that he has no right to relief, granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  Therefore, it is

recommended that the amended complaint be dismissed without further leave to amend.

## III.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's amended complaint be dismissed with prejudice.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 4th day of June 2015.

<u>**S/Martin C.  Carlson**</u>
Martin C. Carlson
United States Magistrate Judge
